United States District Court
Southern District of Texas
FILED

APR 1 4 2003

Michael N. Milby
Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

RAUL HERNANDEZ-PANTOJA,    )
             )
v.     **Petitioner**   )
             )   **CIVIL ACTION NO. B-02-197**
             )
JOHN ASHCROFT, UNITED STATES )
ATTORNEY GENERAL, et al.   )
             )
     **Respondents.**  )
             )
_____)

## RESPONDENTS' OBJECTIONS TO MAGISTRATE JUDGE'S
## CONSOLIDATED REPORT AND RECOMMENDATION

## STATEMENT OF THE CASE

### I. CONSOLIDATED HABEAS PETITIONS AND COMMON CLAIMS

   This is one of nine cases that is subject to a consolidated Magistrate's Report and Recommendation ("R&R") .1  These cases are all habeas petitions filed by criminal resident aliens (Petitioners), challenging the legality of removal orders issued by the Board of Immigration Appeals (BIA).  The Petitioner in the present case, Hernandez-Pantoja, and the alien Petitioners in the other cases have all been found removable, ineligible for immigration relief, or both for "conviction" of a controlled substances offense or an "aggravated felony" as a "drug trafficking crime" based on their

---

[1] The nine cases are:  <u>Salazar Regino v. Trominiski</u>, Civil Action No. B-02-45;  <u>Cantu-Delgadillo v. Trominski</u>, Civil Action No. B-02-114;  <u>Carrizalos-Perez v. Cabrera</u>, Civil Action No. B-02-136; <u>Sandoval-Herrera v. Cabrera</u>, Civil Action No. B-02-138; <u>Hernandez-Pantoja v. Ashcroft</u>, Civil Action No. B-02-197; <u>Oviedo-Sifuentes v. Ashcroft</u>, Civil Action No. B-02-198; <u>Lucio v. Ashcroft</u>, Civil Action No. B-02-225; <u>Rodriguez-Castro v. Ashcroft</u>, Civil Action No. B-02-228; <u>Rangel-Rivera v. Ashcroft</u>, Civil Action No. B-03-002.

Texas deferred adjudications of guilt,2 or convictions following a guilty plea or trial, of felony drug possession under Texas law. Primarily, Petitioners are raising the following two challenges to their removal orders.

First, most if not all Petitioners are challenging the finding that they have a "conviction" for immigration purposes within the meaning of the Immigration and Nationality Act (INA). See Magistrate's Report and Recommendation (R & R) at 30-35. The INA defines a "conviction" as, among other things, "a formal judgment of guilty" or in the alternative "a plea of guilty" and "some form . . . restraint on the alien's liberty." See 8 U.S.C. § 1101(a)(48). Petitioners claim that as a matter of statutory construction, equal protection, or uniform application of the law, the BIA must read an unstated "first offender" exception into the definition of "conviction" so that an alien's first time state offense of simple drug possession is not construed to be a conviction for immigration purposes. See R & R at 31-32. These are statutory-construction and constitutional questions of first impression in the Fifth Circuit. The Ninth Circuit has read this type of "first offender" exception into the statute. Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000). The BIA has rejected this reading and does not apply Lujan-Armendariz outside the Ninth Circuit. Matter of Salazar-Regino, 23 I & N Dec. 223, 2002 WL 339535 (BIA).3 The Eighth and Eleventh Circuits have rejected the Ninth Circuit's Lujan-Armendariz construction in any case where an alien has been placed on probation for more than a year for a first-time state drug offense. Vasquez-Velezmoro v. U.S.I.N.S.,

---

2 The Fifth Circuit has construed a Texas' deferred adjudication to come within the definition of a "conviction" for immigration purposes, holding that federal law controls and it is immaterial that this type of disposition is not deemed to be a conviction under state law if a defendant successfully completes his probation. Moosa v. INS, 171 F.3d 994, 997 and n. 1 (5th Cir. 1999).

3. This is the Board decision in the instant habeas matter.

281 F.3d 693, 698 (8th Cir. 2001); Fernandez-Bernal v. Attorney General, 257 F.3d 1304, 1307 n. 4 (11th Cir. 2001). As shown in greater detail below, the Magistrate has disposed of the case on other grounds and not decided these issues.

Second, most if not all Petitioners have disputed that their Texas crimes of felony drug possession, an "aggravated felony" as a "drug trafficking crime." See R & R at 33-35. Unlike the first issue, this is not a question of first impression in the Fifth Circuit. In United States v. Hernandez-Avalos, 251 F.3d 505, 509-10 (5th Cir. 2001), the Fifth Circuit held that a state felony drug possession conviction comes within the plain meaning of the definition of an "aggravated felony/drug trafficking crime" for immigration purposes, and that Congress clearly intended aliens with such convictions to be removed. The BIA has announced that it must apply the Fifth Circuit's Hernandez-Avalos construction of "aggravated felony" in all removal cases arising in the Fifth Circuit. See Matter of Salazar-Regino, supra. Applying that construction to Petitioners' cases, the BIA concluded each Petitioner is removable, or ineligible for immigration relief, because of an aggravated felony/drug trafficking crime based on his conviction of felony drug possession under Texas law. Petitioners claim that this is an unconstitutional retroactive application of the judicial decision in Hernandez-Avalos, because at the time they pled guilty or were convicted the BIA did not consider their crimes to constitute an aggravated felony for immigration purposes (because the BIA was misreading the law). As shown in greater detail below, the Magistrate has adopted Petitioner's due process/retroactivity theory, contrary to the position of the Fifth Circuit which rejected such a claim in Hernandez-Avalos. R & R. 33-35, 36-40.

## II.    PROCEDURAL BACKGROUND

The Government moved to dismiss Hernandez-Pantojar's habeas petition and other habeas petitions for lack of habeas jurisdiction, on the ground that Petitioners are in the wrong Court, because judicial review of their statutory and constitutional challenges to the finding that they are removable for (1) conviction (2) of an aggravated felony or drug crime is available in the court of appeals on direct review, and Petitioners are misusing habeas corpus to bypass that review.

The Magistrate denied the motions to dismiss for lack of jurisdiction and proceeded to conduct de novo evidentiary hearings on the issue of the legality of the BIA's removal orders, taking testimony from several Petitioners (Salazar-Regino, Cantu-Delgadillo,Carrizalos-Perez, Sandoval-Herrera, Rangel-Rivera) about their uncertainty about the immigration consequences of their pleas at the time they pled guilty or were convicted. The Government objected to these hearings, but was overruled.

Four of the nine consolidated cases were initially assigned to another judge of this Court. (Lucio, Oviedo-Sifuentes, Rodriguez-Castro, and Hernandez-Pantajo). Two of these cases were held in abeyance over the Government's objection (Lucio and Oviedo-Sifuentes), and therefore no habeas returns were filed. These cases were noticed for hearing on January 24th and 25th before the present Magistrate, and were then transferred to this Court for disposition two days before the Magistrate signed the Consolidated Report and Recommendation.

## III.    REPORT AND RECOMMENDATION

On March 27, 2003, the Magistrate issued a consolidated Report and Recommendation in nine cases, including the present one. The Magistrate made individual fact findings in each case based on a combination of: (1) the facts shown in the Government's exhibits, returns, and administrative

4

records of the removal or deportation proceedings, (2) extra-record testimony by Petitioners about their subjective understanding of the law at the time of their pleas or convictions; and (3) the unsworn oral arguments of Petitioners' counsel as to various Petitioners' understanding of the law or the immigration warnings they received at the time of their pleas or convictions.

### A.    Individual Findings of Fact Supported by the Administrative Record

Hernandez-Pantoja attempted to enter the United States as a returning resident alien on September 22, 1999. Hernandez-Pantoja was denied admission and placed in removal proceedings because he was inadmissible for having been convicted of possession of marijuana. Administrative Record ("A.R.") at 312.

Hernandez-Pantoja has two convictions. The first conviction was for the unauthorized use of a motor vehicle, a third degree felony, on February 11, 1988. After entering a plea of guilty, he was found guilty and sentenced to seven years in prison. However, the imposition of the sentence was suspended and he was placed on seven years community supervision. A.R. at 86. The second conviction occurred on September 8, 1997, for possession of marijuana in a quantity of between 50 and 2000 pounds. A.R. at 277-85. Hernandez-Pantoja entered a plea of guilty. The criminal court adjudged him guilty and sentenced him to ten years in prison. However, the imposition of the sentence was suspended and he was placed on seven years community supervision. A.R. at 281-82.

The Immigration and Naturalization Service (the "Service" or "INS") issued a Notice to Appear to Hernandez-Pantoja on September 23, 1999, charging that he was inadmissible for having been convicted of a violation of a law relating to a controlled substance pursuant to §212(a)(2)(A)(i)(II) of the INA, 8 U.S.C. §1182(a)(2)(A)(i)(II). A.R. at 312. At a hearing October 25, 1999, Hernandez-Pantoja, through counsel, admitted allegations 1-3 as alleged in the Notice to

Appear, but denied allegation 4 and the charge of removability pursuant to §212(a)(2)(A)(i)(II) of the INA, 8 U.S.C. §1182(a)(2)(A)(i)(II). A.R. at 43. In support of the denied allegation and charge, the INS presented a certified copy of the record of conviction. A.R. at 47-48; see also, A.R. at 277-285. Based on the conviction record, the immigration judge found Hernandez-Pantoja removable as charged. A.R. at 48. Henandez-Pantoja was allowed to submit an application for relief. Id.

At the hearing on the merits of Hernandez-Pantoja's application for relief, the immigration judge found that Hernandez-Pantoja was ineligible for the relief he was seeking because he had been convicted of an aggravated felony. Specifically, the immigration judge determined that Hernandez-Pantoja's conviction for unauthorized use of a motor vehicle was a conviction for an aggravated felony, which made him ineligible for relief. A.R. at 38. He then ordered Hernandez-Pantoja be removed from the United States to Mexico. A.R. at 39.

Hernandez-Pantoja timely filed his appeal of the decision of the immigration with the Board of Immigration Appeals ("BIA"). A.R. at 25-27. Hernandez-Pantoja alleged that the immigration judge erred in applying the definitions of "conviction" and "aggravated felony" to convictions that pre-dated the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3546 (Sept. 30, 1996) ("IIRIRA"), and misapplied the definition of "aggravated felony" to the crime of unauthorized use of a motor vehicle. A.R. at 26.

On June 21, 2002, the BIA dismissed Hernandez-Pantoja's appeal, finding that he was ineligible for relief based on his conviction for possession of marijuana rather than his conviction for unauthorized use of a motor vehicle. A.R. at 2. Hernandez-Pantoja thereafter filed the instant petition for writ of habeas corpus.

### B.    Common Rulings Of Law

The Magistrate concluded that the court has habeas jurisdiction to decide Petitioners' constitutional challenges to the findings that they are removable based on a conviction of an aggravated felony or drug crime, reasoning that there is no decision "in any circuit hold[ing] that habeas review of constitutional claims [is] impermissible because such claims could have been, but were not raised on direct review in the circuit court."  R & R at 35.

In regard to the merits of the habeas petitions, the Magistrate reserved judgment on the statutory and constitutional issues of first impression as to whether a  "first-offender" exception should be read into the definition of a conviction for immigration purposes, as well as a claim by Petitioners that their removal or deportation orders violate international law and treaties.  R & R 31-35.  The Magistrate noted in dicta, however, that "Supreme Court and Fifth Circuit preceden[t] seemingly has foreclosed all of the[ latter] claims." R & R 35.

In regard to the issue of whether the Fifth Circuit's decision in Hernandez-Avalos applies to Petitioners' guilty pleas or convictions, the Magistrate ruled that it is a violation of due process to retroactively apply that decision to convictions prior to Hernandez-Avalos.  R & R at 36, 37-38.  The Magistrate acknowledged that under Hernandez-Avalos a state felony crime of simple drug possession comes within the meaning of an aggravated felony/drug trafficking crime.  Id. at 38.  He also acknowledged that the Petitioners "would be deemed guilty of an aggravated felony and thus be subject to removal with no form of relief available" if they pleaded guilty after the decision in Hernandez-Avalos. Id. at 38.  However, based on extra-record testimony in the evidentiary hearings, the Magistrate reasoned that some Petitioners were "in doubt" about whether their felony drug possession crimes constituted aggravated felonies, that there was "a great deal of confusion amongst

7

the criminal bar" about whether this was the case, and speculated that some Petitioners may not have pleaded guilty had they known that their crimes would be construed to constitute deportable aggravated felonies. Id. at 36, 38. The Magistrate also relied on representations of Petitioners' counsel and found that "most if not all of [counsel's] clients had not been informed prior to their plea that there would be immigration consequences." Id. at 39.

Given these findings, the Magistrate applied case law from the mid-1960's regarding the retroactivity of judicial construction of criminal statutes, see Bouie v. City of Columbia, 378 U.S. 347, 358 (1964), and ruled that "[t]o apply Hernandez-Avalos to these Petitioners retroactively. . . converts a disposition which, at the time they entered into pleas, carried little to no immigration consequences into one that mandates deportation." R & R at 38. The Magistrate ruled that this "violates Due Process" because it is "retroactive application of a new construction of a statute," and has the effect of making deportation "an additional penalty[]" for "the 'criminal offense.'" R & R at 37-38. The Magistrate also concluded that this was compounded by the fact that about half of the aliens[4] in the consolidated cases received deferred adjudications of guilt, which the Magistrate noted would not constitute a conviction under Texas law if probation were successfully completed. R & R at 36.[5]

For these reasons the Magistrate concluded that the BIA erred in retroactively applying the Fifth Circuit's construction of an aggravated felony in Hernandez-Avalos to Petitioners' convictions,

---

[4] Sandoval-Herrera, Carrizales-Perez, Hernandez-Pantoja, Lucio, and Rodriguez-Castro. R & R at 36 n. 34..

[5] The Magistrate Judge ignored that the Fifth Circuit has held that a Texas deferred adjudication of guilt constitutes a "conviction" for federal immigration purposes. Moosa, 171 F.3d at 994-97.

and that the BIA is required to continue to apply its prior incorrect reading of the law, because that was the construction in effect when Petitioners pled guilty or were convicted. Id. at 39-40. Thus, the Magistrate ruled that Hernandez-Avalos applies prospectively, only to convictions postdating the decision. Id.

## OBJECTIONS TO FACT FINDINGS

### A.    The Report Mischaracterizes the Facts Regarding Petitioner

The Respondents object to the R & R's references to facts outside the record evidence related to Raul Hernandez-Pantoja ("Hernandez-Pantoja"). The R & R repeats factual misstatements set out in Hernandez-Pantoja's petition for writ of habeas corpus and contains speculation not in the record or new facts not present in the record, but taken de novo during hearings. As the Supreme Court has recently made clear, review of the legality of a removal order is limited to the administrative record that was before the BIA and served as the basis of the removal order. INS v. Ventura, 123 S.Ct. 353, 355-56 (2002); see also, §242(b)(4)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1252(b)(4)(A). Because a District Court sitting in habeas may not take evidence de novo, but must rely upon the administrative record before it, the "facts" underlying the R & R which are unsupported averments of Hernandez-Pantoja's counsel or contradict the administrative record are erroneous and contribute to the overall error of the R & R.

### B.    Facts as Alleged by the Petitioner as and Found by the R&R

The Magistrate Judge's statement of facts closely mirrors Hernandez-Pantoja's recitation of the facts as enumerated in the petition for writ of habeas corpus. Both contain irrelevant facts, facts not in the administrative record, and other misstatements. To the extent the R & R echoes

9

Hernandez-Pantoja's rendition of the facts not supported by the administrative record, the Respondents object to the Magistrate Judge's findings.

**Irrelevant Facts.** The R & R goes on at length about whether unauthorized use of a motor vehicle is an aggravated felony or not. R & R at 16. However, this discussion is irrelevant in that the BIA found that Hernandez-Pantoja was removable and ineligible for relief based on his conviction for possession of marijuana. A.R. at 2.

**Relevant Factual Omissions.** The R & R asserts that Hernandez-Pantoja claims the BIA violated his substantive due process guarantees of "fair notice" in its decision of June 21, 2002. R & R at 17. Hernandez-Pantoja was convicted on September 8, 1997, for an offense that took place on January 21, 1997. A.R. at 277-285. The R & R omits the fact that within the conviction record itself is language that states that a plea of guilty or nolo contendere may have immigration consequences and that Hernandez-Pantoja was informed of that fact.6 A.R. at 281.

The R & R also fails to mention that, since 1985, it has been the law in Texas that, before a plea of guilty or nolo contendere may be accepted by the criminal court, the defendant **SHALL** be admonished that, if he or she is not a United States citizen, such a plea for the offense charged "may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." Tex. Code of Crim. Proc. Ann. art. 26.13(a)(4) (Vernon 1989 & Supp. 2002). Failing to do so is reversible error. See Morales v. State, 838 S.W. 2d 272 (App. 8 Dist. 1992). Therefore, for Hernandez-Pantoja to claim that he was deprived of his due process rights of fair notice that his guilty plea in the possession of marijuana offense could be considered

---

6 The Honorable Hilda G. Tagle was the presiding judge in this criminal case.

an aggravated felony is erroneous. Certainly, during the course of his immigration proceedings the state of the law vacillated, but he should have been aware that his conviction placed his continued residence in this country in jeopardy, perhaps forever, at the time he entered his plea and the criminal court accepted the plea.

**Misstatement of Facts.** The R & R mischaracterizes the criminal offense for which Hernandez-Pantoja was convicted as "simple" possession. R & R at 20. The crime for which Hernandez-Pantoja was convicted was possession of marijuana. Texas criminal statutes do not classify or quantify the possession charge other than by misdemeanor or felony, or by degree or class. See Tex. Health & Safety Code §481.121 (West 1998).

The R & R incorrectly states that the INS charged Hernandez-Pantoja as removable pursuant to 8 U.S.C. §1227(a)(2)(B)(i). R & R at 15. The INS charged Hernandez-Pantoja as removable pursuant to §212(a)(2)(A)(i)(II) of the INA, 8 U.S.C. §1182(a)(2)(A)(i)(II). A.R. at 312.

Additionally, the R & R states that "[t]he immigration judge never made any findings as to the effect of Hernandez-Pantoja's conviction for possession of marijuana, which was a ground of removability alleged in the notice to appear." R & R at 16. However, the administrative record shows that the immigration judge found that Hernandez-Pantoja had been convicted for felony possession of marijuana, in violation of Texas law, and that this conviction supported allegation four, subjecting Hernandez-Pantoja to removal pursuant to §212(a)(2)(A)(i)(II) of INA, 8 U.S.C. §1182(a)(2)(A)(i)(II), for having been convicted of a crime relating to a controlled substance. A.R. at 36; see also A.R. 277-285.

Further, the R & R misstates the BIA's decision. The R & R states that the Board "found

11

that his conviction for unauthorized use of a motor vehicle was not an aggravated felony" but,

nonetheless, concurred with the immigration judge's finding that Hernandez-Pantoja was ineligible

for relief based on the BIA's holding in <u>Matter of Salazar-Regino</u>, 23 I&N Dec. 223 (BIA 2002).

R & R at 16-17.  The BIA did not find that unauthorized use of a motor vehicle was not an

aggravated felony.  "Given the lack of detailed information in the record regarding the

circumstances of that crime [unauthorized use of a motor vehicle], we are not persuaded that the

latter conviction involved a 'theft' within the parameters of our holding in *Matter of V-Z-S*, 22

I&N Dec. 1338 (BIA 2002)."  A.R. at 2.

## <u>OBJECTIONS TO RULINGS OF LAW</u>

**I.    THE MAGISTRATE ERRED IN FINDING JURISDICTION OVER THESE HABEAS PETITIONS.**

The Magistrate's ruling that this court has habeas jurisdiction to review Petitioners' statutory

and constitutional challenges to the findings of removability for conviction of an aggravated felony

or drug crime is clearly erroneous for the following reasons.

First, the Fifth Circuit has held for several years that there is no habeas jurisdiction to review

statutory or constitutional challenges to deportation orders where review is available in the court of

appeals by means of a petition for direct review. <u>Rivera-Sanchez v. Reno</u>, 198 F.3d 545, 547 (5th Cir.

1999) ("as we have stated. . . habeas jurisdiction exists only where 'challenges [to deportation orders]

cannot be considered on direct review by the court of appeals;"); <u>Requena-Rodriguez v. Pasquerell</u>,

190 F.3d 299, 305 (5th Cir. 1999) (habeas jurisdiction exists to review "statutory and constitutional

challenges if those challenges cannot be considered on direct review").  While these cases pertain to

habeas review of deportation orders, the same reasoning applies with equal force for habeas review

of removal orders.  Congress has directed that review of such orders is to take place in the courts of

appeals by means of a petition of direct review. 8 U.S.C. § 1252. To permit aliens to misuse habeas corpus to circumvent that review and delay their removal is clearly not proper, is a waste of scarce judicial resources, and frustrates the orderly scheme of review that Congress has created for removal orders.

Second, the law is clear that direct review in the court of appeals is available for the statutory and legal challenges that Petitioners raised in these habeas petitions. It is clear that the court of appeals has jurisdiction to review what constitutes a conviction for immigration purposes. See Moosa, 171 F.3d at 1000-02 (direct review of whether deferred adjudication constitutes a conviction for immigration purposes). The court of appeals also has jurisdiction to review Petitioners' statutory and constitutional claims regarding a "first offender" exception to the definition of a conviction. Indeed these claims have already been reviewed in the Eighth, Ninth, and Eleventh circuits by means of petitions for direct review See Lujan-Armendariz v. INS, 222 F.3d at 745-48; Vasquez-Velezmoro, 281 F.3d at 698; Fernandez-Bernal, 257 F.3d at 1307. It is also well established that the question whether an alien has an aggravated felony for immigration purposes is an issue that the court of appeals has direct review jurisdiction to decide. See, e.g., Chowdhury v. INS, 249 F.3d 970 (9th Cir. 2001) (construing whether conviction for money laundering constitutes an aggravated felony rendering alien deportable); Lopez-Elias v. Reno, 209 F.3d 788 (5th Cir. 2000), cert. denied 531 U.S. 1069 (2001) (construing whether conviction for burglary of vehicle with intent to commit theft is aggravated felony rendering alien deportable).

Third, the Magistrate erred in concluding that there are no Circuit decisions postdating the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001) (finding habeas jurisdiction to review a statutory challenge to a removal order where direct review in court of appeals was not

13

available), which hold that habeas review is impermissible because claims could have been, but were not raised on direct review. R & R at 35. Post- St. Cyr, the Ninth Circuit has held that there is no habeas jurisdiction to review claims that could have been, but were not raised on direct review. See Baeta v. Sonchik, 273 F.3d 1261, 1264 (9th Cir. 2001) (reiterating that there is no habeas jurisdiction to review a removal order where alien has failed to exhaust his judicial remedy of direct review).

Fourth, the Magistrate overlooked the fundamental principle that "the extraordinary nature of the writ [of habeas corpus] . . . should not be resorted to until other more conventional remedies have failed." Mason v. Ciccone, 531 F.2d 867, 868, 870 (8th Cir. 1976). Therefore, as a prudential matter, aliens must exhaust their judicial remedies before seeking review of their removal or deportation orders by habeas corpus. Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001). As shown above, Petitioners did not exhaust their judicial remedies in these cases. Direct review for their legal claims was available in the court of appeals. Petitioners have circumvented that review and instead filed these habeas petitions. In this situation, they are not entitled to habeas review, and the court should dismiss the petitions for lack of jurisdiction.

In sum, since direct review was available in the court of appeals for Petitioners' statutory and legal challenges to their removal orders, there is no habeas jurisdiction to review these petitions, and the Magistrate erred in finding jurisdiction exists. See generally Rivera-Sanchez, 198 F.3d at 547; Requena-Rodriguez, 190 F.3d at 305.

## II.    THE MAGISTRATE ERRED IN TAKING ADDITIONAL TESTIMONY AND CONSIDERING EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORDS.

For the following reasons the Magistrate clearly erred as a matter of law in conducting evidentiary hearings and considering new testimony by some Petitioners as to their understanding of the law at the time of their pleas.

First, the Magistrate erred in taking new evidence, because the scope of review of removal or deportation orders in habeas corpus is limited to pure questions of law. See 8 U.S.C. § 2241(c) (authorizing habeas corpus only where a person is being held in custody in "violation of the Constitution or laws of the United States") (emphasis added); INS v. St. Cyr, 533 U.S. 289, 306 (2001) (habeas corpus traditionally has not been available to review factual determinations made by the Executive Branch in deportation cases); Carranza v. INS, 277 F.3d 65, 73 n. 6 (1st Cir. 2002) (only "[p]urely legal questions" in deportation orders are subject to habeas review and courts may not "second-guess[] the [BIA's] factual findings"); Bowrin v. INS, 194 F.3d 483, 490 (4th Cir. 1999) ("only questions of pure law [in deportation orders] will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited.").

Second, the Magistrate erred in considering this new evidence because the Supreme Court has made clear that review of deportation or removal orders is limited to the administrative record and legal arguments that were actually presented and considered by the agency below. INS v. Ventura, 123 S.Ct. 353, 355-56 (2002). The testimony by several Petitioners as to their subjective understanding of the law at the time of their plea is not evidence that was in the removal or deportation proceedings below. Therefore it could not properly be considered by the Magistrate in reviewing the orders in these cases.

Third, the Magistrate erred in considering this new evidence, because Congress has expressly directed that review of removal orders is limited to "the administrative record on which the order of removal is based." INA Section 242(b)(4)(A) of the Act, 8 U.S.C. §1252(b)(4)(A). This is consistent with fundamental principles of administrative law, which limit judicial review of administrative decisions to the record before the agency at the time of its decision. The Magistrate's conduct of

evidentiary hearings and consideration of extra-record testimony is thus contrary to statute and black-letter administrative law.

Fourth, the Magistrate erred in considering this new evidence, because the Fifth Circuit has made crystal clear that exhaustion of administrative remedies is a prerequisite to habeas review of a removal order. Goonsuwan v. Ashcroft, 252 F.3d 383 (5th Cir. 2001); see also 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right ...."). Any evidence or testimony considered by the Magistrate is new evidence that was not presented to the agency below, and is thereby evidence as to which the Petitioners failed to exhaust their administrative remedies.

Fifth, the Magistrate erred in considering the new evidence of testimony by some Petitioners, as well as Petitioners' counsel's unsworn representations that several Petitioners were not given immigration warnings at the time of their pleas, because the issue of whether it is proper for the BIA to apply the Fifth Circuit's construction of an aggravated felony in Hernandez-Avalos retroactively to Petitioners' pleas and convictions is a question of law to be resolved by reference to Supreme Court and Fifth Circuit precedent. Counsel's unsworn representations that immigration warnings were not given at the time of the pleas (which misrepresented the facts in several cases), and the testimony by several Petitioners about their confusion as to the meaning of the law at the time of their pleas are immaterial to the legal analysis of this issue. As shown in the discussion of the governing Fifth Circuit and Supreme Court case law, judicial decisions apply retroactively. In addition, as shown below, in Hernandez-Avalos the Fifth Circuit already rejected the type of due process challenge Petitioners raised in their habeas petitions. Accordingly the Magistrate should have applied the existing law of the Fifth Circuit, which has rejected the kind of due process challenge to retroactive application of

the construction of an aggravated felony that Petitioners make, and erred by conducting evidentiary

hearings and considering extra-record testimony in resolving these cases.

### III.    THE MAGISTRATE ERRED IN RULING THAT IT VIOLATES DUE PROCESS TO APPLY THE FIFTH CIRCUIT DECISION IN HERNANDEZ-AVALOS RETROACTIVELY TO THESE CASES.

#### A.    Background Of BIA's Misconstruction Of Aggravated Felony And Fifth Circuit Decision In Hernandez-Avalos Clarifying The Correct Meaning.

In the INA Congress has defined an "aggravated felony" to mean, inter alia, "a drug trafficking

crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43((B);7 Hernandez-Avalos,

251 F.3d at 507. Section 924(c) of Title 18, in turn, defines the term "drug trafficking crime" to

include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 810 et seq.). . . ."

18 U.S.C. § 924(c)(2);  Hernandez-Avalos, 251 F.3d at 507.

As the Fifth Circuit has concluded in Hernandez-Avalos, from 1995 onwards, the BIA

misinterpreted this definition to mean a state offense that would be "punishable as a felony" under the

Controlled Substances Act, if it were a federal offense. Hernandez-Avalos, 251 F.3d at 508-09; see

Matter of L-G-, 21 I & N Dec. 89 (BIA 1995), holding modified by Matter of Yanez-Garcia, 23 I

---

[7] In 1996 amendments Congress directed that the INA's definition of "aggravated felony" is to be applied to "any actions taken on or after" the 1996 amendments "regardless of when the conviction occurred." See Section 321(a) of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L. 104- 208, 110 Stat. 3009, 3009-627 (1996). Accordingly the statutory definition of "aggravated felony" applies retroactively, regardless of the date of a plea or conviction. See, e.g., Aragon-Ayon v. INS, 206 F.3d 847 (9th Cir. 2000).

& N Dec. 390 (BIA 2002). Based on this misreading of the law, the BIA erroneously construed state felony drug possession not to come within the definition of an "aggravated felony/drug trafficking crime" for immigration purposes. Hernandez-Avalos, 251 F.3d at 508-10.

In the mean time, in federal sentencing cases, the Fifth Circuit and five other circuits reached a contrary conclusion. See Hernandez-Avalos, 251 F.3d at 508. These courts construed the definition of "aggravated felony/drug trafficking crime" to mean an offense that is (1) punishable under the Controlled Substances Act and (2) a "felony" under the law of the convicting jurisdiction. Id. Under this construction a crime of state felony drug possession constituted an "aggravated felony/drug trafficking crime" for sentencing purposes.8

The BIA recognized the inconsistency between its construction and that of the Circuits in federal sentencing cases, but took the position that the definition of an "aggravated felony/drug trafficking crime" should be read to have two different meanings depending on the context (immigration proceedings versus sentencing proceedings). See Hernandez-Avalos, 251 F.3d at 508-10; Matter of K-V-D-, 22 I & N Dec. 1163 (BIA 1999), overruled by Matter of Yanez-Garcia, 23 I & N Dec. 390 (BIA 2002). The Second Circuit agreed with this dual reading of what constitutes an aggravated felony. Aguirre v. INS, 79 F.3d 315, 317 (2d Cir. 1996),

The Fifth Circuit did not. In 2001, in Hernandez-Avalos, the Fifth Circuit clarified the correct meaning of the definition an "aggravated felony/drug trafficking crime" for immigration purposes. 251 F.3d at 508-10. The Fifth Circuit held that the BIA had been misreading the definition and that"the

---

[8] See United States v. Ibarra-Galindo, 206 F.3d 1337, 1339-40 (9th Cir.2000); United States v. Simon, 168 F.3d 1271, 1272 (11th Cir. 1999); United States v. Hinojoa-Lopez, 130 F.3d 691, 694 (5th Cir. 1997); United States v. Briones-Mata, 116 F.3d 308, 309 (8th Cir. 1997); United States v. Cabrera-Sosa, 81 F.3d 998, 1000 (10th Cir. 1996); United States v. Restrepo-Aguilar, 74 F.3d 361 364-66 (1st Cir. 1996); United States v. Polanco, 29 F.3d 35, 38 (2d Cir. 1994).

statutory language is clear − and is the same − regardless of whether it is applied in sentencing or immigration cases." Id. at 509. The Fifth Circuit concluded that "*the plain language of the statutes 'indicate[s] that Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law.*" Id. at 510 (emphasis added). It also concluded that Congress has always intended aliens with state felony drug possession crimes to be removable as aggravated felons:

> [W]e cannot ignore the fact that the relevant statutes − when properly interpreted − express Congress' intent that aliens with drug convictions that are felonies under state law should be removed . . . .

Id. at 510. Thus, the Fifth Circuit concluded that the definition of "aggravated felony/drug trafficking crime" has always been intended by Congress to mean a state felony offense of simple drug possession. Id. The alien in Hernandez-Avalos argued that it was a violation of due process to apply the Fifth Circuit's construction of aggravated felony retroactively to the alien's 1999 guilty plea to state felony drug possession, on the theory that at the time of that plea it has not been considered an aggravated felony under the BIA's erroneous interpretation. Id. at 508. The Fifth Circuit rejected this contention. Id. at 508-9. It concluded that due process does not require an alien to continue to have the benefit of the BIA's prior misinterpretation of the law, and that it is not fundamentally unfair to treat the alien as an aggravated felon "because he should have [had] the benefit of an agency's erroneous interpretation of applicable law." Id.

Following the decision in Hernandez-Avalos, the BIA issued a published decision in Matter of Salazar-Regino, supra, (one of the consolidated cases subject to the R&R and Recommendation)

19

correcting the BIA's prior misreading of the definition of an aggravated felony and applying the correct definition set forth in Hernandez-Avalos to removal cases arising in the circuit. 9

As shown above, the Magistrate has now ruled that: (1) it is a violation of due process for the BIA to apply the Fifth Circuit's correct interpretation of aggravated felony in Hernandez-Avalos retroactively to convictions or criminal dispositions occurring before that decision, (2) the BIA must continue to apply its prior incorrect interpretation of aggravated felony to all pleas or convictions that occurred while that interpretation was in effect, and (3) the BIA may apply the correct interpretation of aggravated felony in Hernandez-Avalos prospectively only, to pleas or convictions occurring after that decision. R & R at 36-40.

**B.    The Magistrate's Ruling Is Contrary To Rules Of Judicial Retroactivity, Stare Decisis, And Binding Precedent, And Applies A Due Process Analysis That Has Been Rejected By The Fifth Circuit In Hernandez-Avalos.**

First, the Magistrate has clearly erred as a matter of law, because he has failed to understand a fundamental principle of common law – namely the rule of "judicial retroactivity." As the Fifth Circuit has stated: "[t][he general principle [is]  that statutes operate prospectively and judicial decisions apply retroactively" and this has been the law "for near a thousand years." Hulin v. Fibreboard Corp., 178 F.3d 316, 329 and n. 5 (5th Cir. 1999), quoting Kuhn v. Fairmont Coal Co., 215 U.S. 349, 371 (1910) (Holmes, J., dissenting).   Judges "'say what the law is'" not "what the law shall be" like legislatures. Id. at 329 n. 5, quoting Harper v. Virginia Department of Taxation, 509 U.S. 86, 107 (1993) (Scalia, J., concurring).  For hundreds of years the common law has "viewed retroactivity as an inherent characteristic of the judicial power, a power not delegated to pronouce

---

⁹ The BIA also corrected its interpretation nationwide, ruling that the definition of what constitutes an "aggravated felony/drug trafficking crime" for removal purposes coincides with the law of the federal circuit in which the case arises. Matter of Yanez-Garcia, supra.

a new law, but to maintain and expound the old one." <u>Harper,</u> 509 U.S. at 107, quoting 1 W.Blackstone, Commentaries 69 (1795) ("Blackstone"). "Even when a 'former determination is . . . contrary to reason or . . . law,' a judge overruling that decision would 'not pretend to make a new law, but to vindicate an old one from misrepresentation." <u>Id</u>.

As the Supreme Court has recently stated, *"construction of a statute is an authoritative statement of what the statute meant before[,] as well as after[,] the decision of the case giving rise to that construction."* <u>Rivers v. Roadway Express, Inc.,</u> 511 U.S. 298, 312-13 (1994) (emphasis added). Thus, when a court, like the Fifth Circuit in <u>Hernandez-Avalos</u>, construes the meaning of a statute through adjudication, it is "say[ing] what the law is," and is "mak[ing] [law as judges make it, which is to say as though they were 'finding' it — discerning what the law is, rather than decreeing what it is today changed to, or what it will tomorrow be." <u>James B. Beam Distilling Company v. Georgia,</u> 501 U.S. 529, 546 (1991) (Scalia, J., concurring).

Under the case law of the Supreme Court and Fifth Circuit, judicial decisions are to be applied retroactively, even where the decision constitutes a "clear break" with the previous law. <u>James Beam,</u> 501 U.S. at 537-38; <u>Hulin,</u> 178 F.3d at 331-32. This applies to both civil and criminal cases. <u>Harper,</u> 509 U.S. at 97; <u>Hulin,</u> 178 F.3d at 331. This also applies regardless of a party's reliance on former law or the harm that any reliance might cause. <u>Harper,</u> 509 U.S. at 97; <u>Hulin,</u> 178 F.3d at 331.

As the Supreme Court has stated, when a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open . . . and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." <u>Harper,</u> 509 U.S. at 97. "[W]e can scarcely permit 'the substantive law [to] shift and spring' according to the 'particular equities of [a party's] claims' of actual

21

reliance on an old rule and of harm from a retroactive application of the new rule." Id.   A court "has

no more . . . authority in civil cases than in criminal cases to disregard current law or to treat similarly

situated litigants differently." Id.10

Given the foregoing, the Magistrate's ruling that it violates "due process" to apply the Fifth

Circuit's decision in Hernandez-Avalos retroactively to Petitioners' cases is clearly erroneous, because

it violates Supreme Court and Fifth Circuit case law holding that judicial decisions always apply

retroactively. See Reynoldsville Casket Co. v. Hyde, 514 U.S. 749 (1995); Harper, 509 U.S. at 97;

Hulin, 178 F.3d at 332-33.

Second, the Magistrate's ruling is also clearly erroneous because it violates stare decisis, which

make the decisions of the Fifth Circuit binding precedent in all cases within the circuit, unless reversed

on rehearing en banc, overruled by the Supreme Court, or changed by Congress.  See generally Hart

v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001); Payne v. Tennessee, 501 U.S. 808, 828 (1991).

Under stare decisis, neither the Magistrate, this Court, nor the BIA may decline to apply the law as

---

[10]  The Fifth Circuit has discussed the law regarding "judicial" or "adjudicative"
retroactivity in Hulin, 178 F.3d at 330-32.  That decision shows that  for 30 years from the mid-
1960's to the mid-1990's the Supreme Court applied a discretionary rule of judicial
"prospectivity," permitting some judicial decisions to apply prospectively only. Hulin, 178 F.3d at
330-32; see Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07 (1971) (discretionary rule permitting
civil decisions to be applied prospectively only); Linkletter v. Walker, 381 U.S. 618 (1965)
(discretionary rule  permitting criminal decisions to be applied prospectively only). In the civil
context, a judicial decision could be applied prospectively only if the decision "established a new
principle of law, if such a limitation would avoid substantial inequitable results, and if
retrospective application would not retard the purpose and effect of the new rule." Hulin, 178
F.3d at 330-32.  This same type of discretionary prospectivity also applied to administrative
adjudications.  See MacDonald v. Watt, 653 F.2d 1035 (5th Cir. 1981).
     However, between 1987 and 1995 the Supreme Court rejected this concept of judicial
prospective and as the Fifth Circuit has stated, "evidently . . . has [now] concluded that [the]
departure from traditional retroactivity doctrine proved unsatisfactory." Hulin, 178 F.3d at 332.
The Supreme Court has "return[ed]to the general rule of adjudicative retroactivity, leaving only
an indistinct possibility of the application of pure propspectivity in an extremely unusual and
unforeseeable case." Hulin, 178 F.3d at 332.

announced by the court of appeals once it has ruled on a controlling legal issue. See Hernandez-Avalos 251 F.3d at 508 n. 2 ( "[i]f a circuit courts interpretation of 'aggravated felony' is different from the BIA's interpretation, the [agency] is bound by the decision of the circuit court in removal proceedings 'arising in' that circuit."). Binding authority must be followed unless and until overruled by a body competent to do so. The construction of aggravated felony in Hernandez-Avalos is still sound law. It has not been overruled. It is directly on point and constitutes the binding construction of aggravated felony in the Fifth Circuit. As such the BIA, the Magistrate, and this court are required to apply Hernandez-Avalos to the facts in Petitioners' cases.

Third, the Magistrate's ruling is also clearly erroneous because he has applied a due process/retroactivity analysis that the Fifth Circuit has already rejected in Hernandez-Avalos. The Magistrate's analysis is that it is a violation of due process to apply the correct construction of aggravated felony in Hernandez-Avalos retroactively to Petitioners' cases, because under the BIA's misreading of the law at the time Petitioners' plead guilty or were convicted, their state felony drug possession crimes were not considered to be aggravated felonies. R & R 36-40. The Fifth Circuit has already rejected such a claim in Hernandez-Avalos. There, the Fifth Circuit held that it does not violate due process, and is not fundamentally unfair, to remove an alien based on the correct construction of aggravated felony, even if his crime was not considered to be an aggravated felony at the time of his plea because of the BIA's misreading of the law. 521 F.3d at 508 ("[w]e see no reason why . . . it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law").

Fourth, the Magistrate's ruling is erroneous because he has overlooked that in Hernandez-Avalos, the Fifth Circuit did essentially what the BIA has done in Petitioners' cases, "retroactively" apply the correct construction of an "aggravated felony/drug trafficking crime" to an alien's 1999

23

guilty plea to felony drug possession, which was not considered to be an aggravated felony under the BIA's erroneous interpretation at the time of the plea. See 521 F.3d at 508-10. If the Fifth Circuit retroactively applied its construction of aggravated felony in this manner, it was certainly not a violation of due process for the BIA to apply the construction in the same manner. The Magistrate has also overlooked that this is not "retroactive," in the sense of applying a new rule of law to past events. Hernandez-Avalos simply clarifies what the plain meaning of an "aggravated felony/drug trafficking crime" has been all along – i.e., that it means a state felony drug possession crime. 251 F.3d at 510. As the Fifth Circuit stated: "*[w]e cannot ignore the fact that the relevant statutes – when properly interpreted – express Congress's intent that aliens with drug convictions that are felonies under state law should be removed. . . .*" Id. (emphasis added) The fact that the BIA was misreading the definition of aggravated felony at the time Petitioners' pled guilty or were convicted following trial does not give them any right to now avoid the correct application of the law. The law must be enforced as written and as intended by Congress. See id. at 510.

Fifth, the Magistrate's ruling that to apply Hernandez-Avalos in these cases would make deportation *"an additional penalty[]"* for "*the 'criminal offense'*" is a clear misstatement of law. R & R at 36, 38 (emphasis added). The Supreme Court has repeatedly made clear that deportation is not an added "punishment" or "penalty" for a criminal conviction.

> While the consequences of deportation may assuredly be grave, they are not imposed as a punishment. [citation omitted]. . . . Even when deportation is sought because of some [crime] the alien has committed, . . . the alien is not being punished for that act (criminal charges may be available for that separate purpose) but is merely being held to the terms under which he was admitted. And in all cases, deportation is necessary in order to bring to an end an ongoing violation of United States law.

Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 491(1999). See also

Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952) ("[d]eportation, however, severe its consequences, has been consistently classified as a civil rather than criminal procedure").  Deportation is not punitive. INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984); LeTourneur v. INS, 538 F.2d 1368, 1370 (9th Cir. 1976) ("Deportation is not criminal punishment.").

Sixth, the Magistrate's concern about Petitioners' lack of notice about the deportation consequences of their guilty pleas or convictions pertains to the validity of their guilty pleas, not to whether Congress intended their crimes to be aggravated felonies, which is the issue resolved in Hernandez-Avalos.  By testifying or arguing that they did not fully understand the immigration consequences of their pleas, Petitioners and their counsel are improperly attempting to collaterally challenge the validity of their state convictions. This is an issue for state courts to decide, not for this court or the Magistrate to consider in reviewing Petitioners' removal or deportation orders. Moreover, under Texas law an alien's lack of notice about the collateral immigration consequence of his plea does not render the plea involuntary or unintelligent.  See State v. Jiminez, 987 S.W. 2d 886 (Tx. Ct. App. 1999).

Seventh, the Magistrate has clearly erred in concluding that it was improper to apply Hernandez-Avalos retroactively because several of the Petitioners have deferred adjudications that would not qualify as convictions under Texas law if probation were successfully completed.  The Fifth Circuit has ruled that a Texas deferred adjudication of guilt constitutes a "conviction" for immigration purposes regardless of whether it is a conviction under Texas law.  Moosa, 171 F.3d at 1000-02.

Finally, as a matter of common sense, the Magistrate's ruling is clearly wrong.  Hernandez-Avalos is the law of the Circuit.  It decides the correct meaning of an aggravated felony. For the Magistrate to refuse to allow the BIA to apply the correct meaning of the law and require the BIA to continue applying a reading of the law that is incorrect is unprecedented.  The Magistrate is

25

seeking to prevent the Executive Branch from enforcing the law as written by Congress, and to require the Government to permit aliens to illegally remain in this country or receive immigration benefits, in violation of the law as now construed by the Fifth Circuit. This is plainly wrong.

For these reasons the Magistrate has erred in ruling that it is a violation of due process for the BIA to apply the construction of aggravated felony in <u>Hernandez-Avalos</u> to the facts of these cases.

## CONCLUSION

For the foregoing reasons, the court should reject the Magistrate's R&R and Recommendation, which contains numerous errors of fact and law, and should either (1) dismiss these habeas petitions for lack of jurisdiction, or (2) if it finds jurisdiction, affirm the BIA's application of <u>Hernandez-Avalos</u> to the facts, and return these cases to the Magistrate to make recommendations regarding the remaining legal issues that have not been decided.

In the alternative, pursuant to the federal transfer statute at 28 U.S.C. § 1631, this court has authority to transfer the lead case, <u>Salazar-Regino</u> (No. B-02-45), to the court of appeals and stay the remaining cases, pending resolution by that court of the common statutory and constitutional challenges to removability as an aggravated felon that these cases all raise. The transfer statute authorizes transfer for a case like <u>Salazar-Regino,</u> if this Court finds that: (1) the court of appeals would have been able to exercise jurisdiction on the date that the habeas petition was filed in the district court; (2) the district court lacks habeas jurisdiction over the case, and (3) the transfer is in the interests of justice. <u>See</u> 28 U.S.C. § 1631. In the Ninth Circuit, transfer has already been used in immigration cases like <u>Salazar-Regino's</u>, where the court of appeals is the proper forum for review of the legal challenges to a removal order that an alien seeks to raise, but instead he filed in the wrong forum, by filing a habeas petition in district court during the time period permitted for filing for direct review. <u>See</u> <u>Castro-Cortez. I.N.S.</u>, 239 F.3d 1037, 1046 (9th Cir. 2001).

Salazar-Regino meets the requirements for transfer. First, the court of appeals would have been able to exercise jurisdiction on the date her habeas petition was filed. Salazar-Regino filed her habeas petition on March 8, 2002. This was within 30 days of the BIA's decision in her case (February 14, 2002). The habeas petition was therefore filed within the 30-day limit for filing for direct review in the court of appeals. See 8 U.S.C. § 1252 (b)(1).

Second, as shown by the case law cited in the Objections to the Magistrate's jurisdictional ruling, under the current law of the Fifth Circuit, there is no habeas jurisdiction to consider Salazar-Regino's statutory and constitutional challenges to the finding that she is removable for conviction of an aggravated felony based on her first-time state drug offense of felony drug possession, because review of these issues is available in the court of appeals. See, e.g., Requena-Rodriguez, 190 F.3d at 305 (habeas jurisdiction exists to review "statutory and constitutional challenges if those challenges cannot be considered on direct review."). See also Lujan-Armendariz, 222 F.3d at 745-48 (direct review of whether first-time state drug offense constitutes a conviction for immigration purposes); Lopez-Elias, 209 F.3d 789-90 (direct review of whether crime constitutes aggravated felony for purposes of deportation).

Third, the Court could find that transfer would be in the interests of justice because Salazar-Regino raises (1) statutory and constitutional issues of first impression as to an alien's removability for an aggravated felony based on a first-time drug offense of felony drug possession, and (2) a constitutional issue as to the retroactive application of the Fifth Circuit's definition of aggravated felony in Hernandez-Avalos, which it would be in the interests of justice, and the expeditious and orderly adjudication of the merits of the case, for the court of appeals to resolve on direct review. See Aquacate Consol. Mines, Inc. v. Deeprock, Inc., 566 F.2d 523 (5th Cir.1978).

Entry of an order transferring Salazar-Regino to the court of appeals and staying the other

27

cases would also be in the interests of judicial economy, because it would enable this court to avoid

having to decide the purely legal issues raised by these habeas petitions, as well as the jurisdictional

issue of whether there is habeas jurisdiction, until after the court of appeals has decided these issues

on transfer of <u>Salazar-Regino</u>.

Respectfully  submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel:  (956) 389-7051
Georgia Bar No. 590315
Federal Bar No. 23937

Date:  April 14, 2003

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Objections to the Magistrate Judge's Consolidated Report and Recommendation was mailed via first class mail, postage prepaid to:

> Jodi Goodwin, Esquire
> 1322 E. Tyler Ave.
> Harlingen, TX  78550

on this 14th day of April, 2003.


LISA M. PUTNAM
Special Assistant United States Attorney

29