UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

TEODULO CANTU-DELGADILLO,          )
                                   )
v.                                 )     C.A.  B-02-114
                                   )
E.M. TROMINSKI, et al.             )
_____    )

DANIEL CARRIZALOS-PEREZ,           )
                                   )
v.                                 )     C.A.  B-02-136
                                   )
AARON CABRERA, et al.              )
_____    )

MANUEL SANDOVAL-HERRERA,           )
                                   )
v.                                 )     C.A.  B-02-138
                                   )
AARON CABRERA, et al.              )
_____    )

RAUL HERNANDEZ-PANTOJA,            )
                                   )
v.                                 )     C.A.  B-02-197
                                   )
JOHN ASHCROFT, et al.              )
_____    )

JOSE MARTIN OVIEDO-SIFUENTES       )
                                   )
v.                                 )     C.A.  B-02-198
                                   )
CHARLES ARENDALE, et al.           )
_____    )

CESAR LUCIO,                       )
                                   )
v.                                 )     C.A.  B-02-225
                                   )
CHARLES ARENDALE, et al.           )
_____    )

PRAXEDIS RODRIGUEZ-CASTRO          )
                                   )
v.                                 )     C.A.  B-02-228
                                   )
AARON CABRERA, et al.              )
_____    )

EXHIBIT "D" IN SUPPORT OF
MOTION TO RETURN CASE TO FIFTH CIRCUIT

# 03-41492

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### PETITION FOR EN BANC RECONSIDERATION

**LAURA ESTELA SALAZAR-REGINO,** Petitioner/Appellant
v.
**E.M. TROMINSKI,** District Director, INS; and
   **JOHN ASHCROFT,** U.S. Attorney General, Respondents/Appellees

———

**TEODULO CANTU-DELGADILLO,** Petitioner/Appellant
v.
**E.M. TROMINSKI,** District Director, INS; and
   **JOHN ASHCROFT,** U.S. Attorney General, Respondents/Appellees

———

**DANIEL CARRIZALES-PEREZ,** Petitioner/Appellant
v.
**AARON CABRERA,** Acting Director, INS; and
   **JOHN ASHCROFT,** U.S. Attorney General, Respondents/Appellees

———

**MANUEL SANDOVAL-HERRERA,** Petitioner/Appellant
v.
**AARON CABRERA,** Acting Director, INS; and
   **JOHN ASHCROFT,** U.S. Attorney General, Respondents/Appellees

———

**RAUL HERNANDEZ PANTOJA,** Petitioner/Appellant
v.
**JOHN ASHCROFT,** U.S. Attorney General, and
   **CHARLES ARENDALE,** Acting Director, INS, Respondents/Appellees

———

**JOSE MARTIN OVIEDO-SIFUENTES,**  Petitioner/Appellant
v.
**CHARLES ARENDALE,** Acting Director, INS, and
   **JOHN ASHCROFT,** U.S. Attorney General, Respondents/Appellees

———

**CESAR LUCIO,** Petitioner/Appellant
v.
**CHARLES ARENDALE,** Acting Director, INS, and
   **JOHN ASHCROFT,** U.S. Attorney General, Respondents/Appellees

———

**PRAXEDIS RODRIGUEZ,** Petitioner/Appellant
v.
**AARON CABRERA,** Acting Director, INS, and
   **JOHN ASHCROFT,** U.S. Attorney General, Respondents/Appellees, and

———

**NOHEMI RANGEL-RIVERA,** Petitioner/Appellant,
v.
**CHARLES ARENDALE,** Acting Director, INS, and
   **JOHN ASHCROFT,** U.S. Attorney General, Respondents/Appellees

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel for Petitioners hereby certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1. The United States Government, specifically, the Department of Homeland Security, ("DHS"), formerly, the Immigration and Naturalization Service, ("INS"), and the Executive Office for Immigration Review, ("EOIR"); [1]

2. Petitioners Laura Estela Salazar-Regino, and Nohemi Rangel-Rivera, and

3. Counsel for Petitioners, Lisa S. Brodyaga, and Jodi Goodwin. [2]

_____
Lisa S. Brodyaga, Esq.
August 15, 2005

_____

[1]   The record herein will be cited by page, where (R:1) refers to page 1 of the primary record, *e.g.,* that of *Salazar-Regino v. Trominski,* CA B-02-045. The Supplemental Record will be cited by Volume and page as (RS1:1), *i.e.,* page 1 of Volume 1 of the Supplemental Record. The administrative records will likewise by cited by volume and page, as, *e.g.,* (AR:1), for page 1 of the administrative record, and (ARS1:1), for page 1 of the first supplemental administrative record.

[2]   The other Petitioners/Appellants, whose cases were severed until these two were resolved, could also be considered to have an interest. They are: Teodulo Cantu-Delgadillo, B-02-114; Daniel Carrizales-Perez, B-02-136; Manuel Sandoval-Herrera, B-02-138; Raul Hernandez-Pantoja, B-02-197; Jose Martin Oviedo-Sifuentes, B-02-198; Cesar Lucio, B-02-225 and Praxedis Rodriguez, B-02-228. According to an announcement made by the Office of the U.S. Attorney in open court in *Zamora-Garcia et al v. Moore et al,* CA M-02-144 (S.D.Tx. McAllen Div.), there are approximately 200 such cases on hold, awaiting final disposition of the case at bar.

TABLE OF CONTENTS

I.    PETITIONERS' RULE 35 STATEMENT ....................... 1
II.   ISSUE PRESENTED

      THIS COURT SHOULD RECONSIDER *HINOJOSA-LOPEZ* AND
      *HERNANDEZ-AVALOS,* GIVEN THE STRONG INDICIA THAT THEY
      WERE INCORRECTLY DECIDED, AND THE CONSTITUTIONAL AND
      INTERNATIONAL LAW PROBLEMS OTHERWISE CREATED .......... 2

III.  STATEMENT OF THE CASE
      A.   COURSE OF PROCEEDINGS AND DISPOSITION BELOW ....... 2
      B.   THE FACTS ......................................... 3

III.  ARGUMENT
      A.   THE APPROACH OF THE BIA ........................... 4
      B.   DEVELOPMENT OF THE ISSUE IN THIS COURT ............ 6
      C.   THE APPROACHES OF OTHER CIRCUIT COURTS ........... 7
      D.   THE DECISION IN PALACIOS-SUAREZ ................... 7
      E. UNDER *JEROME* v. UNITED STATES, THE TERM "ANY FELONY"
      USED IN A FEDERAL CRIMINAL STATUTE PRESUMPTIVELY REFERS
      ONLY TO FEDERAL CRIMES, AND WHILE 8 U.S.C. §1101(a)(43)
      BROADENS AGGRAVATED FELONIES TO INCLUDE STATE OFFENSES,
      IT IS BEST READ AS INCLUDING STATE OFFENSES THAT WOULD
      ALSO BE CRIMES UNDER 18 U.S.C. §924(c), TO WIT, THOSE
      OFFENSES DEFINED BY THE SPECIFIED FEDERAL STATUTES .... 9
      F.   THE CONSTITUTIONAL AND INTERNATIONAL LAW PROBLEMS . 13

V.    CONCLUSION ........................................... 15

CERTIFICATE OF SERVICE
PANEL DECISION IN *SALAZAR-REGINO et al v. TROMINSKI et al,*
      No. 03-41492

TABLE OF AUTHORITIES
CASES

*Beharry v. Reno,*
      183 F.Supp.2d 584 (E.D.N.Y. 2002), reversed, *sub nom*
      *Beharry v. Ashcroft,* 329 F.3d 51 (2nd Cir. 2003),  . . . 15

*BMW of North America v. Gore*,
      517 U.S. 559 (1996) . . . . . . . . . . . . . . . 1, 3, 14

*Bridges v. Wixon,*
      326 U.S. 135 (1945) . . . . . . . . . . . . . . . . 14

*Cordes v. Gonzales,*
      __ F.3d __ (9th Cir. 2005),

ii

2005 U.S. App. LEXIS 16716 . . . . . . . . . . . . . . . 13

*Francis v. INS,*
    532 F.2d 268 (2nd Cir. 1976) . . . . . . . . . . . . . 5

*Gerbier v. Holmes,*
    280 F.3d. 297 (3rd Cir. 2002) . . . . . . . . . 1, 13

*INS v. Cardoza-Fonseca,*
    480 U.S. 421 (1987) . . . . . . . . . . . . . . . . 7

*INS v. St. Cyr,*
    533 U.S. 289 (2001) . . . . . . . . . 1, 6, 13, 14, 13, 14

*Jerome v. U.S.,*
    318 U.S. 101 (1943) . . . . . . . . . . . . . 1, 6, 9-12

*Jones v. Cunningham,*
    371 U.S. 236 (1963) . . . . . . . . . . . . . . . . 4

*Kemp v. State,*
    861 SW2d. 44 (App. 14 Dist. 1993) . . . . . . . . . . 12

*Logan v. Zimmerman Brush,*
    455 U.S. 422 (1982) . . . . . . . . . . . . . . . . 15

*Lujan-Armendariz v. INS,*
    222 F.3d 728 (9th Cir. 2000) . . . . . . . . . . . . . 5

*Mississippi Band of Choctaw Indians v. Holyfield,*
    490 U.S. 30 (U.S. 1989) . . . . . . . . . . . . . . 1, 10

*Nehme v. INS,*
    252 F.3d 415 (5th Cir. 2001) . . . . . . . . . . 1, 10, 11

*Oliviera v. Ashcroft,*
    382 F.3d 1045 (9th Cir. 2004) . . . . . . . . . . . 1, 13

*Rosales v. BICE,*
    No. 04-8465 (Fifth Cir. pending) . . . . . . . . . . . 4

*Shackleford v. State,*
    261 Ark. 721 (Ark. 1977) . . . . . . . . . . . . . 12

*U.S. v. Hernandez-Avalos,*
    251 F.3d 505 (5th Cir. 2001) . . . . . . 1-4, 6, 12, 13, 15

iii

*U.S. v. Hinojosa-Lopez*,
     130 F.3d 691 (5th Cir. 1997) . . . . . 1, 2, 5-7, 12, 13, 15

*U.S. v. Palacios-Suarez*,
     F.3d     (6th Cir. 2005),
     2005 U.S. App. LEXIS 14930 . . . . . . . . . . 1, 7-9, 13

*U.S. v. Pornes-Garcia*,
     171 F.3d 142 (2nd Cir. 1999) . . . . . . . . . . . . 1, 13

*Webster v. Reproductive Health Services*,
     492 U.S. 490 (1989) . . . . . . . . . . . . . . . . 13

*Zamora-Garcia et al v. Moore et al*,
     CA M-02-144 (S.D.Tx. McAllen Div., pending) . . . . . . . i

### ADMINISTRATIVE DECISIONS

*Matter of A-F-*,
     8 I&N Dec. 429 (BIA, A.G. 1959) . . . . . . . . . . . 12

*Matter of Barrett*,
     20 I&N Dec. 171 (BIA 1990) . . . . . . . . . . . . . . 4

*Matter of Davis*,
     20 I&N Dec. 536 (BIA 1992) . . . . . . . . . . . . . . 4

*Matter of K-V-D-*,
     22 I&N Dec. 1163 (BIA 1999) . . . . . . . . 2, 4, 9, 11-13

*Matter of L-G-*,
     21 I&N Dec. 89 (BIA 1995) . . . . . . 2, 4, 6, 7, 9, 12, 13

*Matter of Manrique*,
     21 I&N Dec. 58 (BIA 1995) . . . . . . . . . . . . 2, 5, 6

*Matter of Salazar-Regino*,
     23 I&N Dec. 223 (BIA 2002) . . . . . . . . . . . . . . 2

*Matter of Silva*,
     16 I&N Dec. 26 (BIA 1976) . . . . . . . . . . . . . . 5

*Matter of Werk*,
     16 I&N Dec. 234 (BIA 1977) . . . . . . . . . . . . . . 5

### STATUTES

18 U.S.C. §924(c) . . . . . . . . . . . . . . . . . . 6, 9, 11

18 U.S.C. §924(c)(2) . . . . . . . . . . . . . . . 8, 12, 15

8 U.S.C. §1101(a)(43) . . . . . . . . . . . . . 6, 9, 11, 12

8 U.S.C. §1101(a)(43)(B) . . . . . . . . . . . . . 6, 11, 15

8 U.S.C. §1229b(a) . . . . . . . . . . . . . . . . . . 2, 3

Arkansas Statutes Annotated,
    §82-2617 . . . . . . . . . . . . . . . . . . . . . . . 12

Immigration Act of 1990,
    §501(a)(2) . . . . . . . . . . . . . . . . . . . . . . . 4

Texas Health & Safety Code,
    §481.102(3)(D) . . . . . . . . . . . . . . . . . . . . 12

Texas Health & Safety Code,
    §481.115(d) . . . . . . . . . . . . . . . . . . . . . 12

## OTHER AUTHORITIES

Federal Rules of Appellate Procedure,
    Rule 35 . . . . . . . . . . . . . . . . . . . . . . . . 1

## I.  PETITIONERS' RULE 35 STATEMENT

(A) The panel decision conflicts with, *inter alia,* the following decisions of the United States Supreme Court and of this Honorable Court, and consideration by the full court is therefore necessary to secure and maintain uniformity of the Court's decisions:  1) *INS v. St. Cyr,* 533 U.S. 289 (2001); 2) *BMW of North America v. Gore*, 517 U.S. 559 (1996); 3) *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (U.S. 1989); 4) *Jerome v. U.S.,* 318 U.S. 101 (1943), and 5) *Nehme v. INS*, 252 F.3d 415 (5th Cir. 2001), and

(B) These proceedings involve an issue of exceptional importance: whether *U.S. v. Hinojosa-Lopez,* 130 F.3d 691 (5th Cir. 1997) [3] and *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001) [4] were correctly decided, where, in holding that Congress intended the term "felony" to be interpreted with reference to state law, this Court failed to consider either the presumption established by *Jerome v. U.S.,* or the reasons the BIA had reached a contrary conclusion, [5] and where there are serious questions as to whether, consistent with the U.S. Constitution and international law, a plea disposing of state charges of a controlled substance offense which

---

[3]  Holding that drug conviction that is a felony under state law is an aggravated felony under the Sentencing Guidelines.

[4]  Rejecting collateral attack to removal order on the basis that the BIA incorrectly used a federal standard in determining that a state felony for simple possession of a controlled substance was not an aggravated felony under 8 U.S.C. §1101(a)(43)(B).

[5]  Every other Circuit Court which has addressed the issue in the immigration context has held that a state felony conviction for possession of a controlled substance is not an aggravated felony for immigration purposes. *See, Oliviera v. Ashcroft*, 382 F.3d 1045, 1050 (9th Cir. 2004); *Gerbier v. Holmes,* 280 F.3d 297 (3rd Cir. 2002); and *U.S. v. Pornes-Garcia*, 171 F.3d 142 (2nd Cir. 1999). And the Sixth Circuit recently reached the same conclusion in a Sentencing Guidelines case, *U.S. v. Palacios-Suarez,* ___ F.3d ___ (6th Cir. 2005), 2005 U.S. App. LEXIS 14930.

would be a misdemeanor under federal law, in a manner which carries no immigration consequences, can, due to changed interpretations of the law, be retroactively characterized as an "aggravated felony," and the LPR be subjected to removal, with no possibility of relief.

## II.   ISSUE PRESENTED

**THIS COURT SHOULD RECONSIDER *HINOJOSA-LOPEZ* AND *HERNANDEZ-AVALOS,* GIVEN THE STRONG INDICIA THAT THEY WERE INCORRECTLY DECIDED, AND THE CONSTITUTIONAL AND INTERNATIONAL LAW PROBLEMS OTHERWISE CREATED**

### III.   STATEMENT OF THE CASE
### A.   COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Petitioners, long-term permanent residents, were placed in removal proceedings following deferred adjudication dispositions of Texas charges of possession of marijuana.  In *Salazar,* the IJ terminated proceedings on January 20, 1999, in reliance on *Matter of Manrique,* 21 I&N Dec. 58 (BIA 1995). [6]   INS appealed, and on February 14, 2002, the BIA sustained INS' appeal, and ordered removal.  *Matter of Salazar-Regino,* 23 I&N Dec. 223 (BIA 2002).  In *Rangel*, the IJ granted relief under 8 U.S.C. §1229b(a) on May 11, 1999, relying on BIA precedent [7] holding that the offense was not an aggravated felony, (R:43).  INS appealed, asserting that the grant was an abuse of discretion.  The appeal was sustained on December 19, 2002, solely on the basis of *Hernandez-Avalos*. Both Petitioners filed habeas petitions.  On March 26, 2003, the U.S. Magistrate recommended granting the petitions, on the grounds that, under *BMW*

_____

[6]   *Manrique* held that, for policy reasons, first-time drug offenders given rehabilitative treatment meeting specified criteria would not be treated as convicted for immigration purposes.

[7]   *Matter of L-G-,* 21 I&N Dec. 89 (BIA 1995) (whether a drug offense is an aggravated felony is resolved by reference to federal law); and *Matter of K-V-D-,* 22 I&N Dec. 1163 (BIA 1999) (same).

*v. Gore, supra*, Petitioners were denied "fair notice" of the "civil

penalties" (mandatory deportation), which, under *Hernandez-Avalos,*

would necessarily result from their pleas. (R:149-188).    On

September 30, 2003, the District Court adopted the Magistrate's

findings.  However, she rejected his recommendations, and dismissed

the petitions, holding that Petitioners had no liberty interest,

and thus no Due Process rights, in discretionary relief. (R:13-35).

Petitioners' timely appeal, (R:12), was dismissed on June 30, 2005.

### B.  THE FACTS

The District Court summarized the facts as follows, (R:16):

> At the time of entering their guilty pleas, all Petitioners
> were lawful permanent residents ("LPRs").  ...  All
> Petitioners pled guilty in state courts to offenses
> involving simple possession of a controlled substance,
> Several petitioners received deferred adjudication,... and
> others received punishment consisting of probation. At the
> time Petitioners entered their plea agreements, their
> offenses under state rehabilitative statutes were not, as a
> matter of BIA policy, considered convictions if the aliens
> met certain requirements.  Additionally, their offenses of
> simple possession of a controlled substance were not
> considered to be aggravated felonies under the INA.
> Nevertheless, as a result of changes in the law after
> Petitioners pled guilty, to be discussed in this opinion,
> the INS later initiated removal proceedings on the basis of
> these convictions.  Because the Petitioners' offenses of
> simple possession are classified as aggravated felonies,
> Petitioners are each ineligible to apply for cancellation of
> removal under the relief established in 8 U.S.C.
> §1229b(a)(3) (providing aliens convicted of aggravated
> felonies are ineligible for cancellation of removal).

Additional relevant facts include the stipulation that, when their

petitions were filed, all the Petitioners were "under custody of

some sort," for purposes of filing habeas petitions. [Transcript,

Dkt. 26, p.105]. [8] Petitioners' strong equities are also relevant.

_____

[8]  At Oral Argument, Respondents conceded that removal orders
are custody. The Solicitor General made the same concession at the
Supreme Court in *Rosales v. ICE,* which was remanded to this Court,

Both came to the U.S. at early ages. Ms. Salazar was six; Ms. Rangel, fourteen. (R:391,RS8:259). Both have otherwise clean records, (R:175,394), and extensive family ties in the U.S., including minor U.S. citizen children. (R:151;RS8:175). Both would have won relief in the exercise of discretion. (R:394) (RS8:262). Indeed, the IJ's grant of cancellation of removal to Ms. Rangel was vacated solely on the basis of *Hernandez-Avalos*. (ARS8:40-48).

### III.  ARGUMENT
### A.  THE APPROACH OF THE BIA

Drug trafficking was first introduced as an aggravated felony by §501(a)(2) of the Immigration Act of 1990. From the beginning, the BIA has determined whether a controlled substance offense was an aggravated felony by measuring the elements of the offense against federal statutes, to determine whether it would be a felony under federal law. *See, Matter of K-V-D-, supra,* 22 I&N Dec. at 1167:

> The respondent also emphasized that the relevant precedent decisions issued by the Board over the past decade, beginning with Matter of Barrett, 20 I&N Dec. 171 (BIA 1990) and Matter of Davis, 20 I&N Dec. 536 (BIA 1992), and culminating in Matter of L-G-, reflect legitimate policy concerns for national uniformity, which are appropriate in the context of administering the federal immigration laws. He argued that these concerns justify our reliance on a federal analogue to determine which state offenses may be deemed felony convictions for purposes of adjudicating removal charges based on section 101(a)(43)(B) of the Act. Finally, the respondent argued that Congress should be presumed to be aware of the Board's longstanding interpretation of the terms of section 101(a)(43)(B) of the Act; yet Congress took no action in its recent comprehensive revisions of the Act to amend that portion of the statute or to alter our interpretation.
>
> Despite its agreement that the specific issue before us is not controlled by United States v. Hinojosa-Lopez, the Service urged us to affirm the decision of the Immigration Judge. At oral argument and in its supplementary brief, the Service argued that "you have to respect the designation of

No. 04-8465. *See also Jones v. Cunningham,* 371 U.S. 236 (1963).

the crime provided by the states."

A similar line of cases, dating back to *Matter of Werk,* 16 I&N Dec. 234 (BIA 1977), led to *Matter of Manrique,* which was in many ways a proxy for the Equal Protection concerns addressed in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000) (finding Equal Protection violation as measured against the Federal First Offender Act), much as *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976), utilized policy considerations to eliminate the Equal Protection violation found in *Francis v. INS,* 532 F.2d 268 (2nd Cir. 1976), with respect to the availability of §212(c) relief in deportation proceedings.

As the BIA explained in *Manrique, supra*, 21 I&N Dec. at 63:

> When a similar issue arose regarding the deportability of aliens accorded first offender treatment under state statutes, the Service submitted a memorandum in which it noted the policy relating to aliens whose drug convictions had been expunged pursuant to the Federal Youth Corrections1 Act and its state counterparts, and it concluded that the FFOA "is for first offenders the equivalent of the Federal Youth Corrections Act." Matter of Werk, supra, at 235. The Service therefore took the position that an alien processed under the FFOA is not subject to deportation, nor is one "convicted under a state counterpart" to that statute. Id. The Board concurred with this policy, concluding that "a conviction that has been  expunged under a state law which is the counterpart of [the FFOA] may not be used as a basis for deportability under section 241(a)(11)." Id. at 236...

In 1996, there were two major revisions to immigration law, AEDPA and IIRIRA.  Notably, there was no hint in either that Congress intended to overrule *Manrique*, or *L-G-,* and their antecedents.

### B.  DEVELOPMENT OF THE ISSUE IN THIS COURT

IIRIRA vastly expanded the definition of aggravated felony, which now encompasses most state and federal felonies, and even some misdemeanors. *See, St. Cyr, supra* at 296. In 1997, when *Hinojosa-Lopez* was issued, whether drug offenses were aggravated felonies

had been addressed only in the Guidelines context, where the Courts had uniformly held that it was sufficient if the offense was a felony under state law. *Id.,* 130 F.3d at 694.   The fact that the BIA had reached a contrary conclusion in *L-G-* was apparently not even raised therein. Nor does it appear that the appellant urged the Court to apply *Jerome v. U.S.* and its progeny. [9] Thus in *U.S. v. Hernandez-Avalos*, also a Guidelines case, the panel was bound by *Hinojosa-Lopez*, and considered only whether it was fundamentally unfair for the BIA not to apply its own contrary precedent. In the instant case as well, the panel was limited by prior precedent.

### C.  THE APPROACHES OF OTHER CIRCUIT COURTS

The impact in removal cases of determining whether a drug offense is an aggravated felony by reference to state law is both extreme, and of doubtful constitutionality, and there has been substantial judicial agonizing over the issue since *Hinojosa-Lopez* was decided. The most recent opinion on the subject is the exhaustive, and well-reasoned decision of the Sixth Circuit in *Palacios-Suarez, supra.*

While that Court specifically agreed with this Court's conclusion that the phrase could not be interpreted differently in different contexts, *id.* at *13, the Court also concluded that the plain language of the statute could support either interpretation, but

---

[9]  In *Jerome,* the Court held that the phrase "any felony" in a federal criminal statute referred only to federal crimes.  Although 8 U.S.C. §1101(a)(43) specifies that the entire section applies to offenses "described in this paragraph whether in violation of Federal or State law...," this caveat cannot and does not change the meaning of "felony" in 18 U.S.C. §924(c), which covers only certain federal felonies.  Petitioners therefore urge that 8 U.S.C. §1101(a)(43)(B) can include only those state offenses which fit the description of §924(c)(2): *i.e.,* those which would be felonies if prosecuted under one of the enumerated federal statutes.

that the legislative history favored the BIA's reading in *L-G-*. [10]
Given the immense impact of *Hinojosa-Lopez*, affecting hundreds, if
not thousands, of LPRs who reside in this Court's jurisdiction, and
the deep split in the circuits, it is urged that the full Court re-
examine the statute, its legislative history, and the application
of the rule of lenity, as required in the deportation context. [11]

### D.   THE DECISION IN PALACIOS-SUAREZ

With the benefit of the analyses of so many other courts, it is not
surprising that the most recent decision on the subject is the most
exhaustive.  And given its result, it likewise cannot be a surprise
that Petitioners consider it to be well-reasoned, particularly with
respect to its determination that the plain language of the crucial
phrase in 18 U.S.C. §924(c)(2) about "any felony punishable under
the Controlled Substances Act" can support two readings:
"punishable under the Controlled Substances Act as a felony," (the
hypothetical federal felony test), and "punishable under the
Controlled Substances Act and constituting a felony under either
federal or state law," (the Guidelines approach). *Palacios-Suarez,
supra,* at *13-14 (internal citations omitted) (emphasis added):

> The statutory language at issue in this case is the
> precise meaning of the phrase "any felony punishable
> under" the CSA. 18 U.S.C. §§ 924(c)(2). Several courts of
> appeals which have adopted the "guideline approach" have
> based their decision on what they have found to be the
> clear language of §§ 924(c)(2). ... As the Ninth Circuit
> has stated, "if Congress had intended [the hypothetical

---

[10]   The concurring opinion agreed that the statutory language
supported either construction, but was unimpressed by the
majority's reliance on legislative history, and reached the same
result through the rule of lenity.  *Id.* at *28-29.

[11]   *INS v. Cardoza-Fonseca,* 480 U.S. 421,449 (1987) (referencing
"the longstanding principle of construing any lingering ambiguities
in deportation statutes in favor of the alien."

federal felony approach], it would have most naturally referred to offenses 'punishable as felonies under the Controlled Substances Act,' but it did not." ... As the dissent noted in that case, "it is a rare statute, however, that could not have been written more clearly than it was." ... Thus, if the "guideline approach" was intended, Congress could have just as easily written the statute to define a "drug trafficking crime" as an offense "'punishable under the Controlled Substances Act and constituting a felony under either federal or state law.'" ... We agree with Judge Canby's reasoning and decline to adopt a statutory interpretation based on hypothetical phrasing which Congress never considered. *Instead, we conclude that the phrase "a felony punishable under" the CSA could be read either as an offense punishable as a felony under the CSA or in the alternative, as a federal or state felony involving conduct which is punishable under the CSA.* Accordingly, either the "hypothetical federal felony" interpretation or the "guideline approach" could be supported by the plain meaning of the statute.

Having found the statutory language ambiguous, the majority turned to the legislative history, relying heavily on the BIA's analysis in *L-G-*.  The concurring opinion reached the same result through the rule on lenity.  Petitioners urge a third and fourth leg for this construction, the policy considerations expressed by the BIA in *L-G-* and *K-V-D-,* which also underlie the presumption that federal law does not incorporate state law, as expressed, *inter alia,* in *Jerome v. U.S.* and its progeny, and the constitutional (and international law) problems which would otherwise arise.

**E. UNDER *JEROME* v. UNITED STATES, THE TERM "ANY FELONY" USED IN A FEDERAL CRIMINAL STATUTE PRESUMPTIVELY REFERS ONLY TO FEDERAL CRIMES, AND WHILE 8 U.S.C. §1101(a)(43) BROADENS AGGRAVATED FELONIES TO INCLUDE STATE OFFENSES, IT IS BEST READ AS INCLUDING STATE OFFENSES THAT WOULD ALSO BE OFFENSES UNDER 18 U.S.C. §924(c), TO WIT, THOSE CRIMES DEFINED BY THE SPECIFIED FEDERAL STATUTES.**

*Jerome v. U.S.,* involved a virtually identical situation.  There too, the issue was the meaning of the phrase "any felony" used in a federal criminal statute.  Justice Douglas delivered the opinion

of the Court, 318 U.S. at 101-2 (internal citations omitted):

> Sec. 2 (a) of the Bank Robbery Act ... provides in part
> that "whoever shall enter or attempt to enter any bank,
> n1 or any building used in whole or in part as a bank,
> *with intent to commit in such bank or building, or part*
> *thereof, so used, any felony or larceny*, shall be fined
> not more than $ 5,000 or imprisoned not more than twenty
> years, or both." Petitioner was indicted under that
> section for *entering a national bank in Vermont with*
> *intent to utter a forged promissory note and thereby to*
> *defraud the bank.* He was convicted after trial before a
> jury and was sentenced to imprisonment for one year and
> a day. *The utterance of a forged promissory note is a*
> *felony under the laws of Vermont ... but not under any*
> *federal statute.* The Circuit Court of Appeals affirmed
> the conviction by a divided vote, holding that "felony"
> as used in §§ 2(a) includes offenses which are felonies
> under state law. 130 F.2d 514. We granted the petition
> for a writ of certiorari because of the importance of the
> problem in the administration of justice and because of
> the diversity of views which have developed as respects
> the meaning of "felony" in §§ 2(a).

The Court held, *id.* at 104, that "any felony" excluded crimes which

were felonies under state, but not federal, law. (emphasis added):

> At times it has been inferred from the nature of the
> problem with which Congress was dealing that the
> application of a federal statute should be dependent on
> state law. Examples under federal revenue acts are
> common. Douglas v. Willcuts, 296 U.S. 1; Helvering v.
> Stuart, 317 U.S. 154, and cases cited. *But we must*
> *generally assume, in the absence of a plain indication to*
> *the contrary, that Congress when it enacts a statute is*
> *not making the application of the federal act dependent*
> *on state law. That assumption is based on the fact that*
> *the application of federal legislation is nationwide*
> (United States v. Pelzer, 312 U.S. 399, 402) *and at times*
> *on the fact that the federal program would be impaired if*
> *state law were to control.*

*See also, Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30,

43-44 (1989) (some internal citations omitted) (emphasis added):

> [T]he general assumption [is] that "in the absence of a
> plain indication to the contrary, ... Congress when it
> enacts a statute is not making the application of the
> federal act dependent on state law." Jerome v. United
> States, 318 U.S. 101, 104 (1943)... One reason for this

9

> rule of construction is that federal statutes are gen-
> erally intended to have uniform nationwide application.
> ... **Accordingly, the cases in which we have found that
> Congress intended a state-law definition of a statutory
> term have often been those where uniformity clearly was
> not intended.**.. A second reason for the presumption
> against the application of state law is the danger that
> "the federal program would be impaired if state law were
> to control." ... For this reason, "we look to the purpose
> of the statute to ascertain what is intended."

This Court used virtually identical language in *Nehme v. INS*, *supra*

at 422 (internal citations omitted):

> We start with the general assumption that in absence of
> plain language to the contrary, Congress does not make
> the application of a federal act dependent on state law.
> ... One justification for this rule is that Congress
> intends that federal statutes have a nationwide
> application... "Accordingly, the cases in which we have
> found that Congress intended a state-law definition of a
> statutory term have often been those where uniformity
> clearly was not intended." ... Another reason for the
> general presumption is that permitting state law to
> control a federal act might impair a federal program. ...
> **Therefore, we must look to the purpose of the federal
> statute to ascertain congressional intent.** ...

*See also, id.* at 424 (emphasis added):

> As the Supreme Court stated in Choctaw Indians, **a state-
> law definition of a federal statutory term is appropriate
> only where Congress clearly did not intend uniformity**.

The broadening of the term "aggravated felony" to include state

crimes occurs in the overarching language of 8 U.S.C. §1101(a)(43),

**not** in 18 U.S.C. §924(c). The meaning of §924(c) is thus unaffected

by the fact that §1101(a)(43) covers both federal and state crimes.

There is absolutely *no* suggestion that Congress did not intend

uniformity in the application either of §1101(a)(43)(B) or §924(c).

Thus under *Jerome* and *Nehme,* §1101(a)(43)(B) covers only offenses

which would be crimes under §924(c)(2), whether the conviction was

obtained under federal or state law, and regardless of any latent

ambiguity in the phrase "any felony," as it appears therein.

Uniformity in the application of §1101(a)(43)(B) is not a statutory mandate, as it was *Nehme*, where the Court applied federal rather than state law in construing the statutory phrase. Nonetheless, as noted in *K-V-D-*, 22 I&N Dec. at 1168, uniformity is vital to immigration law, particularly in the drug context (emphasis added):

> Our holding in Matter of L-G- is based on the express language contained in section 101(a)(43) of the Act. It also reflects policy considerations that favor applying a uniform federal standard in adjudicating removability and determining the immigration consequences of a conviction under the Immigration and Nationality Act. We have followed this policy of uniformity in our recent decisions interpreting various provisions of the Act. See Matter of L-G-, 21 I. & N. Dec. at 93-96, 100-01; see also Matter of Rodriguez-Rodriguez, Interim Decision 3411 (BIA 1999); Matter of Roldan, Interim Decision 3377 (BIA 1999); Matter of A-P-, Interim Decision 3375, at 9-10 n.6 (BIA 1999); Matter of Punu, Interim Decision 3364 (BIA 1998). *Moreover, in the context of determining deportability for drug convictions, the Attorney General has long favored following federal standards, rather than relying on "the vagaries of state law."* Matter of A-F-, 8 I.&N. Dec. 429, 446 (BIA, A.G. 1959).

These issues were not before the Court in *Hinojosa-Lopez,* and the Court failed to consider *Jerome,* probably because it was not raised. In *Hernandez-Avalos,* the Court specifically declined to reach the petitioner's deference argument, because §924(c)(2) is a "general criminal statute[]," 251 F.3d at 509,n.3. Also, since it was also a Guidelines case, the panel was obliged to follow *Hinojosa-Lopez*. However, the result of the Guidelines approach will be an intractable lack of uniformity in the application of the immigration laws. Even if every circuit adopted this approach, the non-uniformity and inequalities would continue, because identical

11

offenses are treated differently in different states. [12]  It was precisely to avoid this problem that the BIA adopted the hypothetical federal offense approach in *L-G-* and *K-V-D-*.  Now that the Third and Sixth Circuits have also adopted this test, [13] and the Second and Ninth have otherwise reached the same result, [14] this Court, which issued *Hinojosa-Lopez* before any circuit had considered the question in the immigration context, should take a fresh look.  This can only be done by hearing the matter *en banc.*

### F.  THE CONSTITUTIONAL AND INTERNATIONAL LAW PROBLEMS

Given that no panel is empowered to overrule a decision by a prior one, Petitioners focused their efforts before the panel on their claim that retroactive application of *Hernandez-Avalos* would be unconstitutional, and/or violate international law.  As in *St. Cyr,* they urge that the constitutional problems are serious enough to warrant a search for an alternative interpretation, under *Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989).

The instant case is almost identical to *St. Cyr.*  Both involve LPRs who negotiated pleas to drug charges at a time when the agreement,

---

[12]  In Texas, possession of any "visible and measurable" amount of cocaine is a felony.  Texas Health & Safety Code §§481.102(3)(D) and 481.115(d); *Kemp v. State*, 861 SW2d 44 (App. 14 Dist. 1993) ("specks" of white powder in baggie, weighing .5 milligrams, sufficient to sustain a conviction). By contrast, as noted in *Shackleford v. State*, 261 Ark. 721, 722 (Ark. 1977), possession of cocaine is only a misdemeanor under Ark. Stat. Ann. §82-2617.

[13]  The Third and Sixth Circuits held in *Gerbier* and *Palacios-Suarez*, that a state drug offense is not an aggravated felony if it is not a felony under federal law and has no trafficking element.

[14]  In *Pornes-Garcia* and *Oliviera v. Ashcroft,* the Second and Ninth Circuits concluded that the same phrase could have different meanings in the Guidelines, and immigration, contexts.

(assuming it made the LPR removable),[15] maintained eligibility for
relief.   *St. Cyr* was nominally decided on the basis of statutory
construction, inspired largely by the serious constitutional issues
which would have otherwise arisen.   Similar constitutional and
international law problems arise herein, due to the Guidelines
approach, and its retroactive application to Petitioners.   Chief
among these is the Due Process claim, under *BMW of North America v.
Gore,* 517 U.S. 559,574-75 (1996) (finding Due Process violation
where there was no "fair notice" of the scope of possible civil
penalties for misconduct), *Bridges v. Wixon,* 326 U.S. 135,154
(1945) ("deportation is a penalty - at times a most serious one"),
and *St. Cyr, supra* at 323-24 (retroactive changes to plea bargain
deprived LPRs of "fair notice").   The panel herein dismissed this
claim as simply a reliance argument.   This is incorrect.   *St. Cyr*
was not based solely on reliance, but also the *quid pro quo* of plea
bargains, and inherent unfairness of retroactively changing their
consequences, after the Government had received the benefit of the
bargain. 533 U.S. at 321-22. Similarly, *BMW* was not actually a
"reliance" case.   No-one claimed that the dealer therein "relied"
on any specified limit to punitive damages when he touched up the
paint on otherwise new BMWs. Rather, as here, he challenged the
unforeseeable *scope* of the civil penalties - there, millions of
dollars for undisclosed touch up paint - here, mandatory
deportation where there had previously either been no immigration

---

[15]   *See, e.g., Cordes v. Gonzales,* __ F.3d __ (9th Cir. 2005),
2005 U.S. App. LEXIS 16716 (denial of access to discretionary
relief violates Equal Protection, where the alien's plea did not,
at the time entered, render her deportable, and she therefore did
not fall under the rationale of *INS v. St. Cyr*).

consequences, (as in Ms. Salazar's case), or, as in *St. Cyr*, (and Ms. Rangel's case), removability, but probable relief therefrom.

The panel also dismissed Petitioners' international law claim as inadequately developed. This, too, is incorrect. Rather than copy it verbatim, they incorporated the reasoning of *Beharry v. Reno,* 183 F.Supp.2d 584,593-99 (E.D.N.Y. 2002), [16] which was reversed solely on procedural grounds, not the merits. Finally, Petitioners raised Equal Protection claims, based on the timing of proceedings, under *Logan v. Zimmerman Brush,* 455 U.S. 422 (1982), and on their location.  The panel rejected the latter as frivolous, without considering that it is not a question of circuit variance, but, as discussed above, one of the inherent inequalities created by the Guidelines approach.  Whether or not these claims can stand alone, they are sufficiently weighty to require a search for an alternate construction of 18 U.S.C. §924(c)(2): here, the hypothetical federal offense test of the BIA, the Third, and Sixth Circuits.

### V.  CONCLUSION

WHEREFORE, it is urged that the Court grant *en banc* reconsideration overrule *Hinojosa-Lopez* and *Hernandez-Avalos*, and adopt the hypothetical federal offense test for determining whether a drug offense is an aggravated felony under 8 U.S.C. §1101(a)(43)(B).

Respectfully Submitted,

Lisa S. Brodyaga, Esq.
REFUGIO Del Rio Grande
17891 Landrum Park Road

---

[16] *Beharry* was reversed, *sub nom Beharry v. Ashcroft,* 329 F.3d 51 (2nd Cir. 2003), for failure to exhaust administrative remedies.

14

San Benito, Texas 78586
(956) 421-3226

CERTIFICATE OF SERVICE

I certify that two copies of the foregoing, with attached decision,
were mailed, first class postage prepaid, to Paul Fiorino, Esq,
OIL, P.O. Box 878, Ben Franklin Sta., Washington, D.C. 20044, on
August 16, 2005.

_____